**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                   Case No. 3:09-cv-961-J-34JRK

JAMES P. CHAMBERS and JANETTE
MATHERS, as Co-Personal
Representatives of the Estate of
Fred J. Chambers, et al.,

        Defendants.

_____

## <u>ORDER</u>

    Fred J. Chambers ("Chambers") was a former tax protester who did not pay federal income taxes for seven years.  The United States ("Government") brought this action against Chambers, on September 22, 2009, to reduce to judgment unpaid income taxes assessed against Chambers for the years 1996 through 2001 and 2003 (including penalties and interest), and to foreclose its tax liens for those years on Chambers' interest in four parcels of real property.  In doing so, the Government seeks to have set aside Chambers' 2004 conveyance of two parcels of real property, to his son, James Patrick Chambers ("James Chambers"),[1] as fraudulent transfers.  (Doc. 6; Amended Complaint ("Am. Complaint")).  During the course of this lengthy litigation, on January 7, 2013, Chambers passed away.

_____

[1]   Chambers transferred the property to his son, James Chambers, and to Defendant Janette Mathers, his step-daughter.  Pursuant to a stipulation of the parties, (Doc. 35), the Court on April 19, 2011, directed that a consent Judgment be entered against Defendant Mathers.  (<u>See</u> Docs. 35, 39).  Specifically, the Court entered Judgment on April 20, 2011, in favor of the United States and against Mathers, finding that the transfer of the two parcels of property is void as to Mathers, and any interest Mathers may have in the two properties is extinguished.  (Doc. 40; Mathers Judgment).

(Doc. 92; Suggestion of Death).   As such, James P. Chambers and Janette Mathers, as co-personal representatives of the Estate of Fred J. Chambers, have been substituted as Defendants.   (Doc. 96; 10/21/13 Order).   For ease of reference, the Court will refer to Defendant as "Chambers."

Prior to his death, Chambers came to regret his tax protest activity.  (See Doc. 62-16; Chambers' Affidavit ¶¶ 3-6).  And, while he acknowledged that he owed back income taxes, he maintained that he did not owe as much as the United States seeks to collect.  That position remains unchanged. (See Doc. 101; Joint Status Report).  Pending before the Court are the United States' Motion for Summary Judgment Against Defendants Fred J. Chambers and James Patrick Chambers (Doc. 60; United States' Motion), and Defendants' response (Doc. 65; Chambers' Response), as well as Chambers' Motion for Partial Summary Judgment (Doc. 62; Chambers' Motion), and the Government's response in opposition.  (Doc. 64; United States' Response).[2]

## I.   **Background**

This case arises from Chambers' refusal to file federal tax returns for the tax years 1996 through 2001 and 2003.  Despite earning income during this period, Chambers stopped filing federal income tax returns and paying federal income taxes in 1996.  (Doc. 60-5 (Chambers Deposition (Chambers Dep.) at 18-19).   In a deposition given as part of this action, Chambers acknowledged that he was buying and selling real estate and stock during this period, but was unresponsive to questions concerning his income from the real estate

---

[2]  The Court has jurisdiction over the parties and the subject matter based on 28 U.S.C. §§ 1340, 1345.

transactions, saying only that he did not remember, and had "no idea" how many real estate transactions he completed.  Id. at 12.  Additionally, Chambers acknowledged that he "dabbled in a little stock . . . on and off," but did not remember how much money he made when he would sell the stock.  Id. at 13.  Chambers testified that he had no records reflecting either the real estate or the stock transactions made during the tax years at issue.  Id. at 14. He also testified that he earned $1,500 a month from the rental of commercial property and lots in a trailer park during this period.  Id. at 15-16.  Again, there are no records of the rent transactions, because, according to Chambers, the tenants "always paid cash."  Id. at 18. Although Chambers acknowledged receiving tax documents in the mail "[n]ow and then;" his "historical method of dealing with [his] Federal tax situation was to ignore it."  Id. at 19; (Doc. 62-16; Chambers' Affidavit ¶ 8).  Chambers' wife Margaret Chambers passed away in 2006. Chambers Dep. at 23; Am. Complaint ¶ 14; (Doc. 8; Answer ¶ 14).[3]

The United States Internal Revenue Service ("IRS") first audited Chambers for tax year 1996 after receiving "informational items" concerning Chambers' income from stock brokerage houses.  Chambers' Motion at 4; Chambers Affidavit ¶ 9 (adopting facts as stated in Chambers' Motion); United States' Response at 2 (adopting facts as stated in Chambers' Motion).  As a result of the audit, the IRS issued a Statutory Notice of Deficiency dated October 14, 1998, under authority of 26 U.S.C. §§ 6212 and 6213, for the tax year ending December 1, 1996. Chambers' Motion at 4; Chambers Affidavit ¶ 9; United States' Response at 3; (Doc. 62-1 at 2 (10/14/98 Notice of Deficiency).  When Chambers failed to file a Tax

---

[3]  "A fact admitted by answer is no longer a fact in issue."  Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941).  "[A] party is bound by the admissions in his pleadings."  Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983).

Court Petition challenging the Notice of Deficiency, the IRS assessed Chambers' 1996 tax liability along with penalty and interest to be $125,036.38 as of March 15, 1999. Chambers' Motion at 5-6; Chambers' Affidavit ¶ 9; United States' Response at 3. The United States pursued collection of the 1996 taxes, and since the date of the assessment on March 15, 1999, the IRS has collected $181,800.22, including accruing interest and penalties. Id.

The IRS subsequently audited Chambers for tax years 1997-2001, and 2003, resulting in additional tax assessments being made in 2004 and 2005. Chambers' Motion at 6; Chambers Affidavit ¶ 9; United States' Response at 3. The IRS records establish that the IRS issued Statutory Notices of Deficiency for tax years 1998-2001 and 2003 as follows:

| Year | Date of Notice | Amount Due (including Penalties and Interest) |
|---|---|---|
| 1997 | Not Produced by IRS | |
| 1998 | 11/28/03 | $20,472.41 |
| 1999 | 11/28/03 | $94,878.76 |
| 2000 | 11/28/03 | $93,986.95 |
| 2001 | 11/28/03 | $132,290.92 |
| 2003 | 5/24/05 | $ 3,120.82 |

Chambers' Motion at 6; Chambers' Affidavit ¶ 9; United States' Response at 3; (Docs. 62-4 at 5, 62-5 at 5, 62-6 at 5, 62-7 at 5, 62-8 at 7; Notices of Tax Deficiency).[4] The Notices identified Chambers' income sources as follows: income from Social Security benefits (1998-2001), capital gains from the sale of stock (1998-2000), retirement plan payments (1998-

---

[4] The IRS failed to locate the administrative file for tax year 1997, and as such did not produce the Notice of Deficiency for that year.

2001, 2003), stock dividends (1998-2001), a real estate sale (2001), interest income (1998-2001, 2003), and rent payments (2000, 2001, 2003).   By far, the bulk of the listed income was from the sale of stock, followed by a one-time sale of real property (the "Craven Road Property") in 2001.

The Government has submitted a certified copy of the Form 4340 Certificates of Assessments to establish its assessment of Chambers' tax liability.  (Doc. 60-1; Declaration of Revenue Officer Ellen Dixon (Dixon Decl.) ¶¶ 2-3; Doc. 60-3 (Certificates of Assessments)).  According to the Certificates of Assessments, the IRS calculates Chambers' taxable income for the years 1997-2001 and 2003 as follows:

| Year | Taxable Income |
|------|----------------|
| 1997 | $353,117.00 |
| 1998 | $ 51,111.00 |
| 1999 | $179,998.00 |
| 2000 | $191,823.00 |
| 2001 | $278,515.00 |
| 2003 | $ 17,885.00 |

Certificates of Assessments.[5]   According to the Government, as of October 19, 2011, Chambers owed a total of $1,071,458.60 in back taxes, interest and penalties:

---

[5]   The United States has assessed delinquent return penalties, pursuant to 26 U.S.C. § 6651(a)(1), and late payment penalties, pursuant to 26 U.S.C. § 6651(a)(2), for each tax year at issue. Chambers' Motion at 9; Chambers' Affidavit ¶ 9; United States' Response at 4-5.

| Year | Amount Due as of 10/19/2011 |
|------|------------------------------|
| 1996 | $ 60,374.06 |
| 1997 | $409,187.67 |
| 1998 | $ 35,490.40 |
| 1999 | $166,002.14 |
| 2000 | $164,442.08 |
| 2001 | $230,921.55 |
| 2003 | $ 5,040.70 |

Dixon Decl. ¶ 4 (citing Doc. 60-4 (Computer calculations)).

### A.   United States' Tax Liens

On October 3, 2001, the IRS recorded with the Clerk of the Florida state court a Notice of Federal Tax Lien against Chambers, in the amount of $125,036.78, for the tax year ending December 31, 1996.  On April 3, 2009, the IRS re-filed the Notice of Federal Tax Lien for the 1996 tax year, in the amount of $19,512.86, reflecting payments made through the years (from Social Security benefits and a "mortgage receivable").  (Doc. 60-7 at 1-2; Notice of Tax Lien for 1996; Doc. 62-13 at 4; 1996 Claim for Refund).

On June 18, 2004, the IRS recorded a Notice of Federal Tax Lien against Chambers in the amount of $347,948.94, for the tax years 1997, 1998, and 1999.  (Doc. 60-7 at 3; Notice of Tax Lien for 1997, 1998, 1999).  The following month, on July 9, 2004, the United States recorded a Notice of Federal Tax Lien against Chambers, in the amount of $252,013.75, for the tax years 2000 and 2001.  (Doc. 60-7 at 4; Notice of Tax Lien for 2000 and 2001).  And, on September 25, 2007, the United States filed a Notice of Federal Tax Lien

against Chambers in the amount of $3,310.64, for the tax year 2003.  (Doc. 60-7 at 5; Notice of Tax Lien for 2003).

### B.   Chambers' Tax Returns

Despite the Notices of Tax Liens, on September 8, 2011, Chambers filed a 1996 Claim for Refund and Request for Abatement seeking $56,253.32 in refund or abatement, and asserting the "Doctrine of Recoupment" to reapply involuntary overpayments to subsequent tax years.  Chambers' Motion at 10; Chambers' Affidavit ¶ 9; United States' Response at 5; 1996 Claim for Refund.  One month later, on October 7, 2011, Chambers transmitted to the IRS federal income tax returns (1040 Forms, U.S. Individual Income Tax Returns) for tax years 1998-2010.  See Chambers' Motion at 10; Chambers' Affidavit ¶ 9; United States' Response at 5; (Doc. 62-14; 10/21/12 Transmittal Letter; Doc. 62-15; 10/07/11 Transmittal Letter).  Later that month, on October 21, 2011, Chambers sent the IRS updated and corrected 1040 Forms for tax years 1996, 1998-2001, and 2003.  (Doc. 62-14; 10/21/12 Transmittal Letter; Docs. 62-18 - 62-23).  These 1040 Forms are all dated October 21, 2011, reflect a filing status of "Married filing separate," and report income and taxes due as follows:

| Year | Adjusted Gross Income | Taxes Owed |
|------|-----------------------|------------|
| 1996 | $113,310 | $33,636 |
| 1998 | $37,362 | $ 3,876 |
| 1999 | $ 48,073 | $ 7,081 |
| 2000 | $ 60,248 | $10,200 |
| 2001 | $ 48,167 | $ 5,609 |
| 2003 | $44,753 | $ 4,881 |

(Docs. 62-18 - 62-22).  According to Chambers, he did not file a 1040 Return for tax year 1997, because the Government did not provide him with its work papers upon which he could build a return.  Chambers' Response at 4.[6]

## C.    Real  Property

The properties that are the subject of the United States' foreclosure action are as follows:

### 1.    Lee Road Property

On January 10, 1986, Chambers and his late wife Margaret I. Chambers, acquired by warranty deed, property located at 722 Lee Road, Jacksonville, Florida ("Lee Road Property").  (Doc. 60-6 at 1; Lee Road Warranty Deed); Am. Complaint ¶¶ 7, 13; Answer ¶¶ 7, 13.

### 2.    Fawnbrook Property

On August 18, 1988, Chambers acquired property located at 7815 Fawnbrook Circle East, Jacksonville, Florida ("Fawnbrook Property"), subject to a mortgage.  (Doc. 60-6 at 2; Fawnbrook Mortgage Deed); Am. Complaint ¶¶ 7, 8; Answer ¶¶ 7, 8.  Two years later, on August 8, 1990, upon full satisfaction of the mortgage deed, Chambers acquired a warranty deed to the Fawnbrook Property.  (Doc. 60-6 at 3; Fawnbrook Warranty Deed); Am. Complaint ¶ 9; Answer ¶ 9.

---

[6]  Chambers argues that "[w]ithout the 1997 administrative file or statutory notice of deficiency, Defendant Chambers cannot mount a defense similar to the defense he has mounted for tax years 1996, 1998, 1999, 2000, 2001, and 2003, i.e., computing his actual tax liabilities."  Chambers Response at 4.

### 3.    Emerson Property

Also on August 18, 1988, Chambers acquired by mortgage deed, property located at 3606 Emerson Street, Jacksonville, Florida ("Emerson Property").  (Doc. 60-6 at 2; Emerson Mortgage Deed); Am. Complaint ¶¶ 7, 11; Answer ¶¶ 7, 11.   On August 8, 1990, after satisfying the mortgage, Chambers obtained a warranty deed for the Emerson Property. (Doc. 60-6 at 3; Emerson Warranty Deed); Am. Complaint ¶ 12; Answer ¶ 12.

### 4.    Deermoss Property

On November 20, 1990, Chambers and his son, Defendant James Chambers, acquired by warranty deed, a parcel of property located at 4817 South Deermoss Way, Jacksonville, Florida  ("Deermoss Property").  (Doc. 60-6 at 4; Deermoss Warranty Deed); Am. Complaint ¶¶ 7, 10; Answer ¶¶ 7, 10.

### D.    Conveyances of Real Property

On June 14, 2004, Chambers conveyed his interest in the Emerson Property and the Lee Road Property to his son, Defendant James Chambers, and his step-daughter, Defendant Janette Mathers, by warranty deed, "for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable considerations . . . ."  Chambers did not receive a mortgage on the property.  (Doc. 60-6 at 5; Warranty Deed Conveyance); Chambers Dep. at 30-31; Am. Complaint ¶¶ 18, 19, 23; Answer ¶¶ 18, 19, 23.[7]  When asked if he conveyed the property to his son and step-daughter in return for a future services contract, Chambers responded that "the only reason I did that is because I didn't want to have any word with

_____

[7]  The warranty deed reflects that Chambers signed the deeds on behalf of himself and his wife Margaret as "her attorney in fact."  (Doc. 60-6 at 5).

probate." Chambers Dep. at  82; <u>see also</u> <u>id.</u> at 29 ("we wouldn't have to worry about probating anything").   Chambers said that there were no conditions placed on the conveyance, other than to "[j]ust be responsible for the upkeep . . . ." <u>Id.</u> at 31, 83.  He acknowledged that at the time of the conveyance, he did not have the resources to pay his federal income tax liability. <u>Id.</u> at 84.

## II.   <u>Standard of Review</u>

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[8]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. <u>See</u> <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's

---

[8]   Civil Procedure Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u>  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

position is insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004).  The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).  "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." <u>T-Mobile South LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp.2d 1337, 1340 (M.D. Fla. 2008). Upon review of cross motions, "the Court must determine whether either party deserves a judgment as a matter of law on the undisputed facts." <u>Id.</u>

## III.   **Discussion**

### A.   **Assessments**

"'In reducing [a tax] assessment to judgment, the Government must first prove that the assessment was properly made.'" <u>United States v. Korman</u>, 388 F. App'x 914, 915 (11th Cir. 2010)[9] (quoting <u>United States v. White</u>, 466 F.3d 1241, 1248 (11th Cir. 2006)).  A tax assessment made by the IRS constitutes a "determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," and such a determination "is entitled to a legal presumption of correctness."  <u>United States v. Fior D'Italia, Inc.</u>, 536 U.S. 238, 242 (2002); <u>see also</u> <u>Bone v. Comm'r</u>, 324 F.3d 1289, 1293 (11th Cir. 2003)(citing <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933)).  In a case involving unreported income, the IRS'

---

[9]  "Although an unpublished opinion is not binding . . ., it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

determination is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity.  See Blohm v. Comm'r IRS, 994 F.2d 1542, 1549 (11th Cir. 1993).  Once the Commissioner produces such evidence linking the taxpayer to an income producing activity, the presumption of correctness applies, and the burden of production shifts to the taxpayer to rebut that presumption by showing by a preponderance of the evidence that the Commissioner's determination is arbitrary or erroneous. Id. at 1549; see also Bone, 324 F.3d at 1293; United States v. Lena, 370 F. App'x 65, 69-70 (11th Cir. 2010); Pollard v. Comm'r, 786 F.2d 1063, 1066 (11th Cir. 1986).  The presumption of correctness does not apply, however, where "the government's assessment falls within a narrow but important category of a 'naked assessment without any foundation whatsoever.'" Portillo v. Comm'r IRS, 932 F.2d 1128, 1132 (5th Cir. 1991) (quoting United States v. Janis, 428 U.S. 433, 442 (1976)). A "naked" assessment occurs when the records supporting the assessment are excluded from evidence or are nonexistent, "so that the basis upon which the assessment is calculated is beyond the knowledge of the Court." U.S. v. Schroeder, 900 F.2d 1144, 1149 (7th Cir. 1990); Coleman v. U.S., 704 F.2d 326, 329 (6th Cir. 1983) (finding a naked assessment where the government conceded that it was without "any reports, work papers and other documents" to support its conclusions).

### 1.    Applicability of the Presumption of Correctness

In support of its Motion, the Government has filed certified IRS Form 4340 Certificates of Assessments reflecting the amounts and dates of taxes owed, payments made by, and penalties assessed against Chambers.  For tax years 1996, 1998 - 2001, and 2003, the Form

4340 Certificates of Assessments submitted by the Government is presumptive and prima facie proof of a valid assessment of Chambers' tax debt for each of those tax years.  See United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989)(the "'Court accepts the document 'Certificate of Assessments and Payments' submitted by the government as presumptive proof of a valid assessment'" (citation omitted)).[10]  The Government has also filed the affidavit of IRS Agent Ellen Dixon verifying the IRS's calculations in the Assessments.  See Dixon Decl.  Additionally, in response to discovery requests by Chambers, the Government produced the administrative files for each of these tax years.  On this record, the Government has established the applicability of the presumption of correctness to the Certificates of Assessments for tax years 1996, 1998 - 2001, and 2003.

The Government, however, did not produce the administrative file for tax year 1997, because the IRS was unable to locate that file.  (Doc. 55; United States' Response to Motion to Compel at 1-2).  In light of the Government's failure to produce either the Statutory Notice of Deficiency or the administrative file, Chambers challenges the applicability of the presumption of correctness to the Certificate of Assessments for tax year 1997.  Chambers' Motion at 14-15.  Chambers contends that the IRS's inability to produce the complete administrative file for that year, coupled with the "irregularities" of failing to consider that the stock and real properties were jointly owned, and failure to ascertain any cost basis in the properties, together shift the burden of proof normally assumed by the taxpayer, to the Government to establish the correctness of its assessment. Chambers' Motion at 13.  He

---

[10]  "The certified transcripts are self-authenticating and need no extrinsic evidentiary support as a predicate to admissibility."  Buaiz v. United States, 521 F. Supp.2d 93, 96 (D. D.C. 2007)(citing Fed. R. Evid. 902).

further contends that the IRS's assessment for 1997 should not be sustained "due to the procedural irregularities surrounding the loss of the administrative file," and such result should be a sanction for the spoliation of evidence.[11]  Chambers' Response at 3-5.

The Government does not dispute that it lost Chambers' administrative file for 1997. United States' Response at 4, 5.  However, the Government argues that its assessment for tax year 1997 is entitled to the presumption of correctness because its assessment is "supported by a minimal evidentiary or factual foundation."  Id. at 11 (citing to the 1997 Certificate of Assessment).  The Government argues that its Certificate of Assessments, issued in 2004, is supported by Chambers' admission that he received income in 1997 from the sale of stock, and the Notice of Federal Tax Lien filed with the Clerk of the Florida Circuit Court reflecting the 2004 assessment for tax year 1997.  Id. at 12-13.

In support of his position, Chambers relies primarily on two decisions, Janis and Portillo.  In Janis, the Supreme Court determined that because the IRS's assessment did not have any foundation in legally admissible evidence, the presumption of correctness would not apply.  However, the Court emphasized that there must be a complete absence of support for an assessment to render it arbitrary, 428 U.S. at 441-42, and, as such, the presumption of correctness does not apply when the government's assessment falls within

_____

[11]     Chambers suggests in his Response that the Government loses the presumption of correctness, and that he should not be held liable for any tax deficiency for tax year 1997 as a "sanction" for the Government's "per se bad faith" spoliation of evidence.  Chambers' Response at 4-5.  The Court rejects this suggestion.  First, Chambers has not filed a motion for sanctions.  Second, the Magistrate Judge considered and rejected Chambers' prior request to fashion an "appropriate remedy" and "sanctions" in connection with the 1997 administrative file.  (Doc. 52 at 3, 5; Chambers' Motion to Compel; Doc. 63 at 2-3; 10/25/11 Order).  Chambers did not appeal the 10/25/11 Order.  Finally, Chambers has made no showing that the Government purposely lost or destroyed any evidence in bad faith, so as to warrant any sanction.  "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference."  Mann v. Taser Intl, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009)

the category of a "'naked' assessment without [a]ny foundation whatsoever." <u>Janis</u>, 428 U.S. at 441.  Under <u>Janis</u>, "[f]or an assessment to be void . . . [i]t must be arbitrary in the sense that the calculation has no support and the true amount of tax owed is incapable of being ascertained."  <u>Schroeder</u>, 900 F.2d at 1149.

In <u>Portillo</u>, the Fifth Circuit Court of Appeals relied on the reasoning in <u>Janis</u> to find a "naked assessment."  932 F.2d 1128.  There, the taxpayer did not receive a Form 1099 from a third party payor in time to file his tax return, so he estimated his income.  <u>See</u> 932 F.2d at 1130-31.  After the taxpayer filed his return, he received the 1099 Form showing much more income than he had reported.  <u>Id.</u> at 1131.  The Commissioner issued a notice of deficiency, relying on the 1099 Form, and did not investigate further whether the taxpayer had actually received the extra income.  <u>Id.</u>  Ultimately, the court found that the IRS presented no evidence of the alleged underreported income other than the difference between the taxpayer's employer's 1099 Form and the taxpayer's tax return.  As such, the Fifth Circuit held that the IRS Commissioner did not get the benefit of the presumption of correctness until he "engage[d] in one final foray for truth in order to provide the court with some indicia that the taxpayer received unreported income," such as by analyzing the taxpayer's bank accounts.  <u>Id.</u> at 1133-34.  Thus, the court determined the assessment to be an arbitrary and erroneous "naked assessment," because the Commissioner had introduced no evidentiary foundation linking the taxpayer to the unreported income.  <u>Portillo</u>, 932 F.2d at 1130, 1132-34.

While the Government's "loss of the administrative file may mean that the assessment lacks a factual foundation, the loss of the file does not necessarily create a 'naked

assessment.'" <u>Boyajian v. United States</u>, No. 04-4835(KSH), 2006 WL 2987093, at *2 (D.

N.J. Oct. 17, 2006); <u>see also</u> <u>Greco v. United States</u>, 380 F. Supp.2d 598, 613 (M.D. Pa.

2005).

> In general, a presumption of correctness attaches to a tax assessment if the assessment is supported by a minimal evidentiary foundation. <u>United States v. Stonehill</u>, 702 F.2d 1288 (9th Cir. 1983). However, an assessment is "naked" and "beyond saving" when "the records supporting an assessment are excluded from evidence, . . . or are nonexistent, . . . , so that the basis upon which an assessment is calculated is beyond the knowledge of the court." <u>United States v. Schroeder</u>, 900 F.2d 1144, 1149 (7th Cir. 1990).
>
> Although courts recognize that the loss of the administrative file may mean that an assessment lacks a factual foundation, loss of the file does not necessarily create a "naked assessment." <u>Cook v. United States</u>, 46 Fed. Cl. 110, 114 (Fed. Cl. 2000). When the government produces evidence to support the assessment in lieu of the lost file, demonstrating that the assessment has a "foundation in fact," then the presumption of correctness applies. <u>Id.</u> at 115. The burden of proof then shifts to the taxpayer to show that the assessment is arbitrary, erroneous or excessive. <u>Helvering v. Taylor</u>, 293 U.S. 507 (1935). If the taxpayer rebuts the presumption, it disappears. <u>Stonehill</u>, at 1294. The burden of proving the deficiency then reverts to the government. <u>Id.</u>

<u>Stoddard v. United States</u>, 664 F. Supp.2d 774, 777-78 (E.D. Mich. 2009); <u>see also</u> <u>Blohm</u>,

994 F.2d at 1549 ("deficiency determination must be supported by 'some evidentiary

foundation linking the taxpayer to the alleged income-producing activity," but that "the

required showing is 'minimal'" (citation omitted)); <u>Boyajian</u>, 2006 WL 2987093, at *2 ("When

the government produces evidence to support the assessment in lieu of the lost file,

demonstrating that the assessment has a 'foundation in fact,' then the presumption of

correctness applies." (citation omitted)).

Indeed, the Supreme Court's decision in <u>Janis</u> teaches that an assessment is not "naked" simply because the file is lost.  Rather, the issue is whether there is admissible evidence to support the assessment.  <u>Cook</u>, 46 Fed. Cl. at 114; <u>see also</u>, <u>Greco</u>, 380 F. Supp.2d at 613 ("the pertinent inquiry . . . is whether there remains competent evidence of the taxpayer's liability.  'Barring special circumstances, if the defendant's liability can be calculated and enforced, it should be calculated and enforced.'" (citation and emphasis omitted)).   In this regard, the Government may support a tax assessment based on admissible evidence, including evidence first disclosed in discovery, that was not reviewed or relied upon by the IRS in initially making its assessment determination.  <u>Cook</u>, 46 Fed. Cl. at 114-15; <u>see also</u> <u>Boyajian</u>, 2006 WL 2987093, at *2 (the government  may support a tax assessment based on any admissible evidence, including "'secondhand records'"); <u>Johnston</u> <u>v. Comm'r</u>, 80 T.C.M. (CCH) 477, 2000 WL 1478477, at *9 (2000)(T.C. Memo 2000-315)("the Commissioner may satisfy the predicate evidence requirement in unreported income cases by introducing evidence linking the taxpayer to tax-generating acts").  "When the government produces evidence to support the assessment in lieu of the lost file, demonstrating that the assessment has a 'foundation in fact,' then the presumption of correctness applies." <u>Boyajian</u>, 2006 WL 2987093, at *2.

While the evidentiary requirement to support an IRS assessment's presumption of correctness is minimal, courts faced with this question have required the Government to provide at least some evidence to support the actual dollar amount of the assessment. Indeed, the Government's loss of its administrative file obliges the Court "to look behind the assessment." <u>Cook</u> 46 F. Cl. at 115.  For instance, in <u>Greco</u>, <u>supra</u>, the Government's proffer

of plaintiff's company's 1099 forms, summary trial balance sheet, and income tax returns was sufficient evidence to support its assessment of federal employment taxes such that its assessment could not be deemed a "naked assessment." Greco, 380 F. Supp.2d at 613. Likewise, in Curley v. United States, 791 F. Supp. 52 (E.D. N.Y. 1992), the Government produced "its own investigative history sheets, affidavits of the revenue officers involved and various corporate checks" to counter the taxpayer's assertion that the Government's assessment was entirely arbitrary. Id. at 54. And in Golub v. Comm'r, 78 T.C.M. (CCH) 367, 1999 WL 669961, at *12 (1999)(T.C. Memo 1999-288), the court rejected the taxpayer's argument that the Government's notice of deficiency was arbitrary under Portillo, noting that in addition to the fact that the taxpayer conceded that he received income from the sale of his stock in the relevant time frame, the Government proffered bank statements and brokerage account records, which the court deemed to be "sufficient ligaments of fact to connect the petitioner to the income at issue." Is. at 12.

Here, the Government's Certificate of Assessments for tax year 1997 set Chambers' taxable income for that year at $353,117.00.  Certificate of Assessments.  While the Government has presented evidence that Chambers did indeed earn income during 1997 which Chambers contends was "pretty much the same as the 1996 year," Chambers Affidavit ¶ 21, as well as a certified Certificate of Assessments, it has not, at this stage of the proceeding, directed the Court to any evidence which supports the actual dollar amount of income it attributes to Chambers for tax year 1997; nor has Chambers pointed to any evidence that the assessment was in fact arbitrary or erroneous.  On this record, the Court determines that a question of material fact remains as to whether the Government's 1997

-18-

assessment is void, as a "naked assessment." See Cook, 46 Fed. Cl. at 115 (court unwilling to accept the Government's proffered evidence as requisite support for its assessment at discovery stage of the proceedings).  Accordingly, the Court does not determine, as a matter of law that the 1997 is a naked assessment, as Chambers requests, and will deny Chambers' Motion in this respect.  Likewise, based on this record, the Court is also unable to conclude, as a matter of law, that this is not a naked assessment.  Accordingly, the United States' Motion is due to be denied with regard to the 1997 assessment.

With respect to tax years 1996, 1998 - 2001, and 2003, the Government has made a sufficient prima facie showing entitling it to the benefit of the presumption that the Certificates of Assessments and Payments are correct, and the burden shifts to Chambers to establish that the tax assessments are not correct.  United States v. White, 466 F.3d 1241, 1248 (11th Cir. 2006); see also Helvering v. Taylor, 293 U.S. 507, 514-15 (1935).

> As tax assessments enjoy a presumption of correctness, the burden is on the taxpayer to overcome this presumption by persuading the finder of fact, by a preponderance of the evidence, that the assessment is incorrect.  If no countervailing proof is introduced, "the trial court [is] . . . justified, in fact required, to enter summary judgment for the amount of the taxes proved to be due."

United States v. Dixon, 672 F. Supp. 503, 507 (M.D. Ala. 1987)(quoting Lane v. United States, 328 F.2d 602, 603 (5th Cir. 1964)), aff'd, 849 F.2d 1478 (11th Cir. 1988)(Table).

## 2.   Chambers' Specific Objections to the IRS Calculations

Title 26 U.S.C. Section 7491 provides that in a court proceeding, when "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed, . . . " the government "shall have the burden of

proof with respect to such issue." 26 U.S.C. § 7491(a)(1); see also Lawrence v. Comm'r IRS, 469 F. App'x 755, 757 (11th Cir. 2012).  As such,

> the burden of proof as to factual matters may shift from the taxpayer to the [IRS] Commissioner, but only if the taxpayer introduces credible evidence regarding a factual matter affecting [his] liability and only if [he] has maintained all required records and cooperated with reasonable requests from the Commissioner, such as providing information and documents.

Langille v. Comm'r IRS, 447 F. App'x 130, 132 (11th Cir. 2011)(citing 26 U.S.C. § 7491(a)); see also Lawrence, 469 F. App'x at 757; Arnold v. Comm'r, 86 T.C.M. (CCH) 341, 2003 WL 22053838, at *2 (2003)(T.C. Memo 2003-259)(burden shifts to IRS with respect to factual issue "if the taxpayer maintained adequate records, satisfied applicable substantiation requirements, cooperated with the Commissioner, and introduced during the court proceeding credible evidence on a factual issue").  For this reason, a taxpayer who fails "to keep records of [his] income assume[s] the hazard that [he] may be called upon to pay a tax based upon an income which cannot be determined to a certainty.'" Olster v. Comm'r IRS, 751 F.2d 1168, 1174-75 (11th Cir. 1985)(citation omitted)(taxpayer has burden of proving IRS's computational method used is arbitrary and without foundation).  Moreover, a taxpayer may not overcome the certified assessments' presumption of correctness by submitting tax returns, uncorroborated oral testimony, or self-serving statements.  See Mays v. United States, 763 F.2d 1295, 1297 (11th Cir. 1985)(taxpayer's computer printout and net worth statements, which did not refer to any original records or contemporaneous documentation, failed to overcome presumption of correctness due IRS's determinations in tax refund suit).  Indeed, the 1040 Forms prepared by the taxpayer do not rebut the presumptively correct tax assessments because they are hearsay documents.  Buaiz, 521 F. Supp.2d at 97; see also

Blodgett v. Comm'r IRS, 394 F.3d 1030, 1040 (8th Cir. 2005)("[a] tax return is generally considered inadmissible hearsay with the exception that the return may constitute an admission by the taxpayer'); Greenbaum v. United States, 80 F.2d 113, 125 (9th Cir. 1935)(income tax return is statement by taxpayer or some one on his behalf, which is hearsay and only receivable in evidence as an admission); Scholet v. Comm'r, 89 T.C.M. (CCH) 1434, 2005 WL 1400056, at *5 (2005)(T.C. Memo 2005-140)("[a] tax return is not evidence of the truth of the facts stated in it").  In unreported income cases, if

> it has been shown through evidence that the Commissioner's determination is arbitrary and erroneous, the ultimate burden of proof or persuasion shifts to the Commissioner. . . This situation is rare and only occurs where the Commissioner has introduced no substantive evidence, and the evidence shows that the claimed tax deficiency arising from unreported income was derived by the government from unreliable evidence.

Amey & Monge, Inc. v. Comm'r IRS, 808 F.2d 758, 761 (11th Cir. 1987).

### a.   **Basis in the Property**

When property is sold, the owner must recognize either a gain or loss.  See 26 U.S.C. § 1001(c).  If the owner realizes a gain from the sale, the amount of the gain is subject to taxation.  See San Francisco Residence Club, Inc. v. Braswell-Guthrie, 897 F. Supp.2d 1122, 1130 (N.D. Ala. 2012).  The Internal Revenue Code provides that the gain from the sale or other disposition of property is the amount realized over its adjusted basis.  26 U.S.C. § 1001(a).  "[I]n determining the gain or loss from the sale or other disposition of property, the basis of the property, as provided in [26 U.S.C. § 1012], is its cost," see Brannen v. Comm'r IRS, 722 F.2d 695, 701 (11th Cir. 1984), and "[t]he cost is the amount paid for such property in cash or other property."  Karara v. Comm'r, 78 T.C.M. (CCH) 197, 1999 WL 549462, at *2

(1999)(T.C. Memo 1999-253)(citing 26 U.S.C. § 1012), aff'd, 214 F.3d 1358 (11th Cir. 2000)(Table), cert. denied, 531 U.S. 980 (2000).

The taxpayer bears the burden of demonstrating that he is entitled to a basis in an asset sold, and if the taxpayer fails to meet that burden, he may be considered to have a zero basis in the asset. See O'Boyle v. Comm'r, 100 T.C.M. (CCH) 14, 2010 WL 2766818, at *3 (2010)(T.C. Memo 2010-149)(citing Tax Court Rule 142(a)), aff'd 464 F. App'x 4 (D.C. Cir. 2012); see also Coloman v. Comm'r IRS, 540 F.2d 427, 431 (9th Cir. 1976). "Proof of basis is a specific fact which the taxpayer has the burden of proving." O'Neill v. Comm'r IRS, 271 F.2d 44, 50 (9th Cir. 1959); see also Rodriguez v. Comm'r, 97 T.C.M. (CCH) 1090, 2009 WL 211430, at *12 (2009)(T.C. Memo 2009-022)(the taxpayer bears the burden of substantiating basis); Wright v. Comm'r, 93 T.C.M. (CCH) 960, 2007 WL 654353, at *7 (2007)(T.C. Memo 2007-50). Notably, "[t]he fact that basis may be difficult to establish does not relieve a taxpayer from his burden." Coloman, 540 F.2d at 430.

Chambers cites Cohan v. Comm'r IRS, 39 F.2d 540, 543 (2d Cir. 1930), and its progeny, as supporting his reconstructed evidence of basis, and urges the Court to reduce his tax liability by following the Cohan rule to estimate his basis in both his stocks and real property, as well as his deductions. In Cohan, the taxpayer failed to maintain records of items he claimed as business entertainment expenses. As a result, the IRS disallowed the entire deduction, despite the fact that the taxpayer established that he did indeed have some deductible expenses. Rejecting this approach, the Second Circuit Court of Appeals held that when the Commissioner concedes the legitimacy of a claimed deduction, the deduction

cannot be disallowed entirely merely because the taxpayer cannot prove the exact figure.

The court explained:

> [a]bsolute certainty in such matters is usually impossible and is not necessary; the [Tax Court] should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent.

Cohan, 39 F.2d at 543-44. However, the Cohan rule does not compel a court "to guess, or estimate." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).[12]  Indeed, while a court may have "considerable latitude in making estimates," Cohan

> "certainly does not require that such latitude be employed. The District Court may not be compelled to guess, or estimate. It may not be compelled to estimate even though such an estimate, if made, might have been affirmed. For the basic requirement is that there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse."

Stein v. Comm'r IRS, 322 F.2d 78, 83 (5th Cir. 1963)(quoting Williams, 245 F.2d at 560).

Thus, in appropriate circumstances, a court may use the Cohan rule to estimate a taxpayer's basis in an asset at the time of transfer. But, "[i]n order for the Court to estimate basis, the taxpayer must provide some 'reasonable evidentiary basis' for the estimation. . . . The Cohan rule should not be used as a substitute for [the taxpayer's] burden of proof." Namyst v. Comm'r IRS, T.C.M. (RIA) 2004-263, 2004 WL 2601545, at *7 (2004)(T.C. Memo 2004-263), aff'd 435 F.3d 910 (8th Cir. 2006).

---

[12] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

### i.   **Stocks**

Chambers argues that "it would not be unreasonable to allow Chambers some reasonable cost basis on the sale of his one-half (1/2) interest in the various stocks" and that he has "fashioned a reasonable methodology" for determining his cost basis.  Chambers' Response at 6.  In doing so, Chambers acknowledges that he has been unsuccessful in acquiring his stock records from the 1990's from the various brokerage houses.  Chambers Affidavit ¶ 22.  For this reason, he has estimated his basis in the stocks sold by referring to print outs of stock values from the Wall Street Journal, and explains that his "normal practice was to purchase and retain stocks for less than two (2) years."  Chambers' Motion at 7; see also Chambers' Affidavit ¶ 18.  Chambers contends that "[e]ven if the Court rejects his use of an average value for the previous two (2) years, then, at minimum, it should adopt a methodology allowing Chambers the lowest value of the stock within the two (2) year [sic] preceding each sale.  This would maximize Chambers' gain on the transaction and thereby penalize him for lack of maintaining records."  Chambers' Motion at 13.

The Government disputes that Chambers' methodology for determining his basis in the stocks sold during the relevant years "substantiates" his actual basis.  United States' Response at 4.  The Government argues that "Chambers has not produced any documents to substantiate when he purchased the stocks at issue - transactions for which he could have and should have maintained the necessary records - and instead relies on an arbitrary and self-serving statement that he did not hold the stocks for longer than two years."  Id. at 11.

"A taxpayer must establish the basis of his or her stock for purposes of determining the amount of gain he or she must recognize."  Wright, 2007 WL 654353, at *7.  "Taxpayers

who fail to prove a basis in a sold asset [such as stock] are considered to have a zero basis in that asset." Arnold, 2003 WL 22053838, at *2; see also Karara, 1999 WL 549462, at *2-3 (where taxpayer failed to submit evidence to support claimed basis in stock and his testimony was vague and devoid of details regarding the purchase of the stock, court found that taxpayer had zero basis in the subject shares of stock). Here, Chambers has failed to cite to any credible or competent evidence of his basis in the securities sold in the relevant tax years. See O'Boyle, 2010 WL 2766818, at *3. It is undisputed that Chambers offers no records of his stock transactions. Instead, he builds his argument on a mere assertion that he generally held his stock for two years, (even though he self-reports that the stocks were held one year or less), relies on third-party information and calculates the average cost of the stock during the arbitrary two-year period prior to its sale. This is not probative of Chambers' true basis in the stock. Where, as here, the taxpayer fails to establish his basis in property, he is left with zero basis. See Karara, supra. Moreover, because Chambers has not presented a reasonable evidentiary basis establishing that his estimates are indeed grounded in fact, the Court is not required to guess or estimate Chambers' basis in his stock under the rule announced in Cohan, supra. Stein, 322 F.2d at 83; Williams, 245 F.2d at 560; see also Lerch v. Comm'r IRS, 877 F.2d 624, 628-29 (7th Cir. 1989) (Cohan rule does not apply when necessary records could and should have been kept).

### ii.    **Real Estate**

Chambers and his wife purchased the Craven Road Property on January 2, 1986. Pointing to the warranty deed for the purchase of the property, Chambers contends that the original cost basis can be determined by reference to the 1986 documentary stamps on

record.  Chambers' Motion at 11-13.  He asserts that the warranty deed "should reflect Documentary Stamps of $750.00 which translates into an original purchase price of $150,000.00," a figure which is consistent with his recollection of the purchase price. Chambers Affidavit ¶16.  The Government responds that Chambers' use of extrapolation from documentary stamps is merely an estimate of actual basis," not substantiated, and "purely speculative."  United States' Response at 8-9.

Although Chambers asserts that one can calculate a purchase price for the Craven Road Property "through algebraic calculation involving documentary stamps," see Chambers' Response at 7, he gives no hint as to the algebraic calculation he used to arrive at the $150,000.00 figure.  Moreover, although he avers that the warranty deed for the Craven Road Property "should" reflect payment of documentary stamps in the amount of $750.00, no such figure appears on the face of the Warranty Deed in evidence.  See Chambers Affidavit Ex. A-1.  Although, there appears to be a documentary stamp affixed to the Warranty Deed, the Court can not discern any legible figure for the amount of stamps.  As such the Warranty Deed provides no evidence as to the price or amount of the documentary stamps actually paid at the time of purchase.

Chambers' assertion that his basis in the subject real estate can be calculated by applying some unknown formula to the price or amount of the documentary stamp which "should" but does not, appear on the copy of the property deed in evidence, is entirely speculative, and does not meet Chambers' burden to establish his basis in the Craven Road Property.  His documentary stamp "calculation" and his self serving recollection do not constitute competent evidence of basis.  Accordingly, Chambers presents no competent

evidence of his basis in the Craven Road Property sold in 2001.  See O'Boyle, 2010 WL

2766818, at *3.  Nothing in Cohan requires that the Court guess at the taxpayer's basis in his

real property in the absence of any competent evidence establishing it.

### b.    Deductions

"A taxpayer may deduct all ordinary and necessary expenses paid or incurred during

the taxable year in carrying on a trade or business if the taxpayer maintains sufficient records

to substantiate the expenses."  Basalyk v. Comm'r, 97 T.C.M. (CCH) 1516, 2009 WL

1346428, at *4 (2009)(T.C. Memo 2009-100)(citing inter alia Deputy v. du Pont, 308 U.S.

488, 495-96 (1940) and 26 U.S.C. § 6001))  "'[A]n income tax deduction is a matter of

legislative grace and . . . the burden of clearly showing the right to the deduction is on the

taxpayer.'"  INDOPCO, Inc. v. Comm'r IRS, 503 U.S. 79, 84 (1992)(citation omitted); see also

Stewart v. Comm'r, 100 T.C.M. (CCH) 149, 2010 WL 3239176, at *5 (2010)(T.C. Memo

2010-184)( "[T]axpayers bear the burden of substantiating the amount and purpose of the

item claimed as a deduction").  As such, the taxpayer must present evidence supporting his

entitlement to the deduction as well as the amount of the deduction.  Amey & Monge, Inc.,

808 F.2d at 761.  "When a taxpayer establishes a deductible expense but is unable to

substantiate the precise amount, the Court may approximate the amount that is deductible

so long as the taxpayer presents sufficient evidence to establish a rational basis for making

the estimate."  Zilberberg v. Comm'r, 101 T.C.M. (CCH) 1012, 2011 WL 37843, at *3

(2011)(T.C. Memo 2011-5)(taxpayer failed to substantiate claimed moving expenses

deduction by not providing any receipts, credit card statements canceled checks, written

summary of expenses, or dates of move or company used, but reasonable deduction was

warranted)(citing <u>Cohan</u>, 39 F.2d at 543-44).  In this regard, taxpayers are required to maintain records that are sufficient to allow the IRS to determine their correct tax liability, including claimed deductions. <u>Stewart</u>, 2010 WL 3239176, at *5 (citing 26 U.S.C. § 6001; 26 C.F.R. 1.6001-1).  However, "[a] taxpayer's unsupported statement that he or she is entitled to a particular deduction will not be sufficient to support the claimed deduction." <u>Hintz v. Comm'r IRS</u>, 712 F.2d 281, 286 (7th Cir. 1983); <u>Weiss v. Comm'r</u>, 77 T.C.M. (CCH) 1253, 1999 WL 34813, at *3, 9 (1999)(T.C. Memo 1999-17)(taxpayer's self-serving testimony does not meet taxpayer's burden of proof to establish entitlement to otherwise unsubstantiated deductions).

As previously discussed, the <u>Cohan</u> rule may be applied to determining the amount of deductions due, if it is clear that the taxpayer is entitled to some deduction, but cannot establish the full amount claimed.  <u>See</u> <u>Ellis Banking Corp. v. Comm'r IRS</u>, 688 F.2d 1376, 1383 (11th Cir. 1982)(quoting <u>Cohan</u>, 39 F.2d at 544)); <u>see generally e.g.</u> <u>Linzy v. Comm'r</u>, 102 T.C.M. (CCH) 482, 2011 WL 5346688, at *2 (2011)(T.C. Memo 2011-264)(applying <u>Cohan</u> rule to estimate allowable business deductions where taxpayer submitted canceled checks, bank account statements, receipts, and invoices purporting to substantiate various expenses, though records were disorganized).  However, the <u>Cohan</u> rule applies only if the taxpayer "can show [his] entitlement to some deduction." <u>Ellis Banking</u>, 688 F.2d at 1383. And, "though a taxpayer can use evidence other than books or records to substantiate claimed deductions, [the Court] is not bound to accept a taxpayer's unverified, undocumented testimony." <u>Zilberberg</u>, 2011 WL 37843, at *3 n.7, 6.

In his Affidavit, Chambers states that he

routinely incurred costs associated with the properties for insurance, repairs, and supplies.   Notwithstanding these expenditures, since I do not have current records, we have elected not to attempt to reconstruct those types of expenses, and only claimed documented expenses consisting of the mortgage interest paid (as per records reported to Internal Revenue Service), reconstructed ad valorem real property taxes (as reported by the Duval County Tax Collector's Office), a nominal maintenance amount for the Lee Road property, my cellular telephone expense, and a nominal amount of mileage for travel to and from the Lee Road and Emerson Street properties to pick up checks, deal with tenant problems, etc.

Chambers Affidavit ¶ 17.   The United States disputes that Chambers has adequately documented his deductions.   United States' Response at 4.

Despite Chambers' reference to "documented expenses" of mortgage interest, "reconstructed ad valorem real property taxes," maintenance fees, mileage and cellular telephone expense, Chambers provides no such documentation whatsoever.   He attaches to his affidavit a 2011 print out from the Duval County Property Appraiser which reflects 2011 ad valorem property taxes, not the taxes paid from 1986 - 2001.   Moreover, he presents no evidence that he incurred maintenance fees or mileage or that he even owned a cellular telephone in tax years 1996 - 2001.   As for his mortgage interest, Chambers appears to rely solely on the self reporting contained in his late-filed 1040 Forms.

Chambers' conclusory statement and his late-filed 1040 Forms declaring deductions are not competent evidence to establish his purported deductions.   When it comes to determining whether a taxpayer is entitled to the deductions he claims, the taxpayer must provide substantiating evidence for any deduction claimed on his late-filed 1040s, which cannot be taken at face value.   Rodriguez, 2009 WL 211430, at *2.   Indeed, when substantiating evidence is not presented, the taxpayer's claimed deductions are treated as

"argument - not evidence." Id. Chambers has failed to substantiate the deductions, and to overcome the presumption of validity accorded the Certificates of Assessments, which recognize no deductions. See Hradesky v. Comm'r IRS, 540 F.2d 821, 823 n.2 (5th Cir. 1976)(record is devoid of any substantiation of alleged deductions); United States v. O'Callaghan, No. 8:09-CV-384-T-23TGW, 2011 WL 3200263, at *6 (M.D. Fla. April 26, 2011), adopted 2011 WL 3200291 (M.D. Fla. June 3, 2011), aff'd, 500 F. App'x 843 (11th Cir. 2012). While Chambers may have spent money on his rental properties, he has not produced any evidence to prove any of these expenditures. Thus, he cannot avail himself of the Cohan rule. Moreover, even if Chambers established by competent evidence that he was entitled to some deductions, given the absence of evidence supporting his claimed deductions, the Court need not guess as to the amounts he could have deducted. See Pfluger v. Comm'r IRS, 840 F.2d 1379, 1383, 1386 (7th Cir. 1988)(declining to apply the Cohan rule to dentist's estimated claimed deductions which relied on "average" dental business deductions).

### c.   **Joint Ownership**

Chambers states that he and his wife "set up joint accounts [as Tenants-by-the-Entirety ("TBE") or Joint Tenants With Right of Survivorship ("JTWROS")]" with regard to the "stock and bond transactions." Chambers' Affidavit ¶ 10. He argues that "the stocks and bonds" were held by him and his wife "as TBE or JTWROS," which he says is reflected on the 1996 Statutory Notice of Deficiency. Chambers' Motion at 11. According to Chambers, as a result of that joint ownership, "only one-half (½) of the sales proceeds from the various stocks and bonds transactions in numerous taxable years were allocable to Chambers." Id. at 13. Additionally, Chambers states that the Craven Road Property, "which we sold in

November 2001, was also held jointly." Chambers' Affidavit ¶ 12 (citing Doc. 62-17; 01/02/86 Warranty Deed).  As such, Chambers contends that he is not liable for his wife's one-half (½) undivided share of the profits from the sale of that property.  Chambers' Response at 3; see also Chambers' Motion at 11 ("[a]ny TBE property is to be allocated one-half (½) to each spouse"), 12-13.

The 1996 Notice of Deficiency listing payments for stocks sold by Chambers and his wife reflects payments to Fred Chambers and Margaret Chambers for stock transactions, one of which identifies the payments as being made to them as "JTWROS."  The Warranty Deed related to the Craven Road Property reflects that the property was conveyed to "Fred J. Chambers and Margaret I. Chambers, husband and wife," and the Lee Road Property was conveyed to "Fred J. Chambers and Margaret I. Chambers, his wife."  These items are the only evidence of joint ownership of any assets owned and sold by Chambers, other than his affidavit.

"[F]ederal income tax liability follows ownership. . . .  In the determination of ownership, state law controls.  'The state law creates legal interests but the federal statute determines when and how they shall be taxed.'" United States v. Mitchell, 403 U.S. 190, 197 (1971)(citation omitted).  Under Florida law, "'property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole . . . .'" In re Sinnreich, 391 F.3d 1295, 1297 (11th Cir. 2004)(quoting Beal Bank SSB

v. Almand & Assoc., 780 So.2d 45, 53 (Fla. 2001)); see also Mathews v. Cohen, 382 B.R. 526, 530 (M.D. Fla. 2007).[13]

> When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it "per tout," meaning that each spouse holds the "whole or the entirety, and not a share, moity, or divisible part." [Citation omitted.] Thus, property held by the husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole.

Beal Bank, 780 So.2d at 53.[14]  Additionally, when real property is acquired and titled in the name of the husband and wife, "it is considered to be a 'rule of construction that a tenancy by the entireties is created . . . .'" Id. at 54 (citation omitted)("'[a] conveyance to spouses as husband and wife creates an estate by the entireties in the absence of express language showing a contrary intent.'" (citation omitted)).  With respect to personal property, such as bank accounts and stocks, the Florida Supreme Court similarly has recognized "the presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property." Beal Bank, 780 So.2d at 57-58 (presumption that bank account is held by spouses as tenants by the entirety vis a vis creditors); see also In re Mathews, 307 F.

---

[13]  Property held as a tenancy by the entireties possesses six characteristics:

> "(1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously)[footnote omitted] (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

Beal Bank, 780 So.2d at 52.

[14]  Unlike joint tenants by the entireties, where each spouse is "seized of the whole," "[i]n joint tenancy with right of survivorship, each person has only his or her own separate share ("per my"), which share is presumed to be equal for purposes of alienation; whereas for purposes of survivorship, each joint tenant owns the whole ("per tout"), so that upon death the remainder of the estate passes to the survivor." Beal Bank, 780 So.2d at 53.

App'x 266, 268 (11th Cir. 2009)("Beal Bank presumption" applied to bank stock which was owned as a tenancy by the entireties where bankruptcy debtor did not expressly disclaim ownership of bank stock as tenancy by the entireties). Notably, while "Florida law recognizes that property held by husband and wife as tenants by the entirety is not subject to execution to satisfy the debts of one spouse . . . [,] 'the IRS's federal statutory powers to tax and attach liens to property trump[s] any state property rights afforded to a taxpayer who holds property by the entireties with [his] spouse.'" United States v. Ryals, 480 F.3d 1101, 1110 (11th Cir. 2007)(quoting In re Sinnreich, 391 F.3d at 1297-98 (recognizing the "'unique powers granted to the IRS under federal law . . . to divide the property rights of tenancy by the entireties property'").

Like the income producing property itself, "[t]he proceeds from the sale or rental of tenancy by the entireties property are also held as a tenancy by the entireties and are owned in total by both the husband and the wife." Passalino v. Protective Group Sec., Inc., 886 So.2d 295, 297 (Fla. 4th DCA 2004); see also Dodson v. Nat'l Title Ins. Co., 31 So.2d 402, 404 (Fla. 1947); Brown v. Hanger, 368 So.2d 63, 64 (Fla. 3d DCA 1979). Thus, when property is held by spouses as tenants by the entirety, "the rental income from the properties are also tenancy by the entirety property . . ." Sunshine Resources, Inc. v. Simpson, 763 So.2d 1078, 1081-82 (Fla. 4th DCA 1999); see also Miller v. Rosenthal, 510 So.2d 1127, 1128 (Fla. 2d DCA 1987)(real property, and rental proceeds of such property were held by debtor and wife as tenants by the entirety).[15]

---

[15]    In United States v. Craft, 535 U.S. 274 (2002), the United States Supreme Court held that because each spouse had certain individual rights in property held as tenants in the entirety that fell within the meaning of property defined by the Internal Revenue Code, the IRS may attach a lien to the

(continued...)

The Warranty Deeds reflect that the Lee Road and Craven Road Properties were conveyed to Chambers and Margaret as husband and wife, and that in 2001, Chambers and his wife, jointly conveyed the Craven Road Property.  None of the Warranty Deeds suggest that Chambers and his wife owned the real property as joint tenants with right of survivorship.  Thus, in the absence of any evidence to the contrary, and by presumption, the real properties owned by Chambers and his wife were held as tenants by the entirety, and the proceeds from the 2001 sale of the Craven Road Property likewise were owned by both in the entirety, with each owning a 100 percent share.  Similarly, Chambers offers no evidence that he and his wife Margaret acquired any stock as joint tenants with right of survivorship.  Rather, the record only shows that the proceeds of one stock transaction were deposited in an account reflecting "JTWROS."  The evidence in the record, when coupled with the presumption in favor of a tenancy by the entireties, establishes that, to the extent that the Chambers owned stock jointly, they did so as tenants by the entirety.  Accordingly, based upon the foregoing law, it does not appear to the Court that Chambers is entitled to halve any capital gains computation for the Craven Road Property or jointly owned stock.[16]

---

[15](...continued)
"TBE" property. Id. at 282.  By this holding, the Supreme Court "held that the Internal Revenue Service has the authority to divide tenancy by the entireties property to satisfy the tax obligation of one spouse." In re Sinnreich, 391 F.3d at 1297.  In Sinnreich, the Eleventh Circuit declined to extend the holding in Craft to other creditors, finding that the IRS had "unique powers" to attach a lien to tenants by the entirety property. Id.

[16]    Chambers has presented no evidence indicating that Mrs. Chambers ever claimed any income from the sale of the Craven Road Property or any jointly held stocks.  Neither Chambers nor his late wife filed any returns for the years in question, joint or otherwise. See e.g. Brunner v. Comm'r, T.C.M. (RIA) 2004-187, 2004 WL 1879829, at *2 (2004)(T.C. Memo 2004-187).  Thus, Chambers in not entitled to claim joint filing status.  Nor has Chambers established that any taxes were ever paid on capital gains from the sale of any stock or the Craven Road Property.  Moreover, Chambers is not entitled to compute his federal income tax liability on the basis of a joint return, because he never filed timely tax returns for the years in question. See Scholet, 2005 WL 1400056, at *5; Arnold, 2003 WL 22053838, at
(continued...)

This Court has held that "a certified transcript such as the Form 4340 provides a sufficient basis for summary judgment if the taxpayer does not present evidence to rebut the presumption or correctness." United States v. Sieloff, No. 808-cv-1106-T-30MAP, 2009 WL 1850197, at *2 (M.D. Fla. June 25, 2009)(citing Buaiz v. United States, 521 F. Supp.2d 93, 96 (D.D.C. 2007)).  Here, Chambers has failed to rebut the presumption of correctness as to tax years 1996, 1998-2001 and 2003.  As such, the United States' Motion seeking summary judgment is due to be granted as to Chambers' tax liability for tax years 1996, 1998-2001 and 2003.

### B.    1996: Abatement or Refund of Alleged Overpayment

In his motion, Chambers seeks a judgment that he has overpaid on his tax liability for tax year 1996.  Chambers' Motion at 16-17.  He contends that the IRS "has collected an excessive amount" towards that tax liability, and that any amount collected within two years prior to the Claim for Refund, which he filed on September 8, 2011, should be refunded and applied towards other tax periods.  Id. at 16.  By virtue of "an ongoing Notice of Levy on a mortgage receivable which has been continuously allocated towards the 1996 liability," and Social Security benefits, the United States has collected payments on the 1996 tax bill since December 2002.  Chambers' Motion at 18; 1996 Claim for Refund.  Chambers contends that "the apparent overpayment which should be refunded or applied to subsequent tax assessments is $58,529.38," as of October 1, 2011.  Chambers' Motion at 18.

---

[16](...continued)
*2.

As authority for his claim of "refund or reallocation," Chambers cites to 26 U.S.C. § 6402(a).  Chambers' Motion at 16.  Section 6402(a) provides that: "In the case of overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person."  26 U.S.C. § 6402(a). Chambers also characterizes his request as one for "abatement," citing 26 U.S.C. § 6404, which he says authorizes the IRS "to abate the unpaid portion of an assessment" that is excessive or erroneous.  Chambers' Motion at 17.  The Government responds that Chambers is not eligible to receive a "refund" for tax year 1996 because he has neither exhausted his administrative remedies, nor paid his 1996 tax liabilities in full.  United States' Response at 13-14.  Additionally, the Government notes that Chambers has not asserted a counterclaim for a refund in the context of this lawsuit.  Id. at 13.

"Federal courts exercise jurisdiction over suits for a refund of federal taxes pursuant to 28 U.S.C. § 1346(a)(1), which along with 26 U.S.C. § 7422(a), constitutes a waiver by the United States of its sovereign immunity.  The burden of demonstrating that sovereign immunity has been waived falls on the party bringing suit against the sovereign."  Martins v. United States, No. 1:08-cv-212-MP-AK, 2010 WL 750291, at *3 (N.D. Fla. March 2, 2010), aff'd, 403 F. App'x 456 (11th Cir. 2010).  Under section 1346(a), a district court has original jurisdiction to hear a civil action against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been

excessive or in any manner wrongfully collected under the internal-revenue laws[.]"  28 U.S.C. § 1346(a)(1); see also Enax v. Comm'r IRS, 476 F. App'x 857, 859 (11th Cir. May 24, 2012)(unpublished opinion).   However, the waiver of immunity is contingent upon the taxpayer's satisfaction of certain jurisdictional prerequisites.  Martins, 2010 WL 750291, at *3.  In order for a district court to have subject matter jurisdiction over a tax refund claim pursuant to § 1346(a)(1), "(1) the taxpayer must have timely filed a valid refund claim with the IRS, which the IRS denied, or six months have passed since the claim was filed with no IRS response; and (2) the taxpayer must have fully paid the challenged tax assessment."  Id. (citing 26 U.S.C. §§ 6532(a)(1) and 7422(a); and Flora v. United States, 357 U.S. 63, 76-76 (1958), aff'd on rehr'g, 362 U.S. 145 (1960)); see also Enax, 476 F. App'x at 859-60 (citing 26 U.S.C. § 7422(a) and 26 C.F.R. § 301.6402-2(a)); Galvez v. IRS, 448 F. App'x 880, 886 (11th Cir. 2011)("Section 7422 requires that a taxpayer (1) pay his tax deficiency and (2) file an appropriate claim with the Secretary of the Treasurey or designee (and have the claim denied) before filing suit for a refund" and "failure to exhaust presents a jurisdictional bar to suits under § 7422").[17]  Thus, "[a]fter the IRS collects taxes owed, a taxpayer may file a claim

---

[17]   The Eleventh Circuit has explained the procedure available to a taxpayer who contests his or her tax liability:

> When a taxpayer is served with a notice of deficiency, he has two ways to contest his tax liability.  He may pay the tax and then sue the government in district court to recover what he claims he should not have paid.  Solitron Devices, Inc. v. United States, 862 F.2d 846, 848 (11th Cir. 1989).  Or he can petition the Tax Court and contest his liability there before paying.  Id.  But once a taxpayer petitions the Tax Court to contest his tax liability for a particular year, he is barred from relitigating that liability later.  26 U.S.C. § 6512(a).  Section 6512(a) is a jurisdictional bar to such challenges.  [Footnote omitted.]  Solitron Devices, 862 F.2d at 848.

United States v. Lezdey, 448 F. App'x 893, 895 (11th Cir. 2011), cert. denied, 132 S.Ct. 2742 (2012).

with the IRS for a refund, and if that claim is denied, he may sue for a refund in federal court." Gulden v. United States, 287 F. App'x 813, 817 (11th Cir. 2008)(citing 26 U.S.C. §§ 6511(a), 6532(a), and 7422(a), and 28 U.S.C. § 1346(a)(1)).  Here, Chambers has not yet paid all that is due and owing for the 1996 tax year.  See Certificate of Assessments.  Indeed, he is trying to stop paying on the 1996 tax bill, and to have amounts previously paid for 1996 applied to reduce money owed for the other relevant tax years.  Thus, the Court determines that Chambers has failed to satisfy the conditions precedent to maintaining an action for a refund, and the Court lacks jurisdiction to consider this request.  See also 26 U.S.C. § 7421(a) (except where specifically provided by enumerated statutes, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person").

Similarly, the Court does not have subject matter jurisdiction to consider Chambers' request for "abatement" pursuant to 26 U.S.C. § 6404.  "Congress has mandated that '[t]he Tax Court shall have jurisdiction' for the review of IRS' denial of a request for abatement . . . , [and] the Tax Court is the exclusive forum to review an abatement denial." Karara v. United States, 402 F. App'x 436, 437 (11th Cir. 2010).  Thus, Chambers must request the abatement from the IRS, and if the request is denied, take his appeal of that denial to the United States Tax Court.  This Court does not have jurisdiction over Chambers' request for abatement under § 6404.  See Hinck v. United States, 550 U.S. 501, 506-07 (2007);  Karara, 402 F. App'x at 437.

Of equal import, the Court notes that the record in this action provides no basis for the relief which Chambers seeks.  Chambers has failed to assert a claim for refund or abatement

-38-

in a counterclaim, and has not moved to amend his answer to include abatement or refund

as affirmative defenses.  Chambers may not amend his answer and affirmative defenses, or

seek to assert a counterclaim through argument in a brief supporting or opposing a motion

for summary judgment.  See Gilmour v. Gates, McDonald and Co. 382 F.3d 1312, 1315 (11th

Cir. 2004).  Moreover, any such motion for leave to amend or to assert a counterclaim would

raise questions of "extreme untimeliness" at this juncture of the litigation.  See Smith v. Sch.

Bd. of Orange County, 487 F.3d 1361, 1367 (11th Cir. 2007); see also e.g. Millennium

Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1298-99 (11th Cir. 2007)(defendant

failed to demonstrate good cause for seeking leave to amend answer to add affirmative

defense after scheduling order deadline).  For all of these reasons, Chambers' request for

refund or abatement is not properly before this Court and provides no basis for affirmative

relief.

### C.    Conveyance of the Emerson and Lee Road Properties

The Government argues that Chambers' June 14, 2004 conveyance of the Lee Road

and Emerson Properties to his son James Chambers were made after Chambers' tax

liabilities for the tax years 1996 through 2003 accrued, and after his income tax liabilities for

1996 through 1998 were assessed. United States' Motion at 6.  As such, "[u]pon assessment

of those liabilities against Chambers, federal tax liens immediately arose and attached to all

of Chambers' property, including the Emerson and Lee Road Properties." Id. at 13 (citing 26

U.S.C. § 6321 and Equity Inv. Partners, LP v. Lenz, 594 F.3d 1338 (11th Cir. 2010)).  The

Government argues that the liens followed the properties to the grantee James Chambers

"despite the fact that the notices of federal tax lien had yet to be filed."  Id. (citing United

States v. Bess, 357 U.S. 51, 57 (1958) and United States v. Domenico, No. 8:09-cv-1282-T-26AEP, 2010 WL 3029019, at *2 (M.D. Fla. April 29, 2010)).  In support of its position, the Government contends that although a tax lien is not valid against a "purchaser" until a notice of lien has been filed, James Chambers does not qualify as a "purchaser" under the Tax Code.  Id. at 13-14 (citing 26 U.S.C. § 6323(h)(6)).  To qualify as a purchaser, the Government explains, "one is required to pay full and adequate consideration for the property," yet James Chambers paid no consideration for the property.  Id.

In response, Chambers argues that his deposition testimony is not conclusive evidence that the property was conveyed for no consideration.  He contends, "[t]he fact that he [Chambers] did not recall during his deposition that his son agreed to accept these properties in exchange for assisting his father and mother well into the future is meaningless." Chambers' Response at 9.

"If a person accrues a federal tax liability, a lien is created by operation of law 'in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.'" Equity Inv. Partners, 594 F.3d at 1342 (quoting 26 U.S.C. 6321); see also Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 267 (1945).  "That lien arises at the time the assessment is made and continues until the tax liability is satisfied or becomes unenforceable by reason of lapse of time." Equity Inv., 594 F.3d at 1342 (citing 26 U.S.C. § 6322).  "A lien is not valid, however, 'against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor' until notice has been filed." Id. (citing 26 U.S.C. § 6323(a)).  Thus, "'any 'security interest' which arises prior to the proper filing of a federal tax lien takes priority over the tax lien.'" Id. (citation omitted).  "In the case of real

property, notice of the tax lien must be filed 'in one office within the State . . . as designated by the laws of such State, in which the property subject to the lien is situated . . . .'" Id. (citing 26 U.S.C. § 6323(f)(1)(A)(I)).  However, once a tax lien attaches, the lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property.  United States v. Bess, 357 U.S. at 57; United States v. Donahue Inds., Inc., 905 F.2d 1325,1331 (9th Cir. 1990); United States v. Domenico, 2010 WL 3029019, at *2.

For purposes of § 6323, "[a] 'purchaser' is defined as a 'person who, for adequate and full consideration . . . , acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.'" Moco Invs., Inc. v. United States, 362 F. App'x 305, 308-09 (3d Cir. 2010)(quoting 26 U.S.C. § 6323(h)(6)).  Thus, the IRS's lien is not valid against James Chambers if, before the IRS filed notice of the lien, James Chambers qualified as a "subsequent purchaser[ ] without actual notice" under Florida law.  See generally Moco Invs., Inc., 362 F. App'x at 309.[18]  In his deposition, Chambers testified that he transferred the properties to his son and step-daughter for purposes of estate planning.  He further identified the consideration for the transfers to be "about $10.00" with no mortgage and no other conditions.  Chambers Deposition at 29-31,

---

[18]   The implementing regulation defines "purchaser" as follows:

> The term "purchaser" means a person who, for adequate and full consideration in money or money's worth . . . acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.

26 C.F.R. § 301.6323(h)-1(f)(1).  "Adequate and full consideration" means "a consideration in money or money's worth having a reasonable relationship to the true value of the interest in property acquired." Id. § 301.6323(h)-1(f)(3).  "The term also includes the consideration in a transaction in which the purchaser has not completed performance of his obligation, such as the consideration in an installment purchase contract . . . ." Id.

82-83.  Although Chambers now asserts that his son agreed to accept the properties in exchange for assisting his parents in the future, this unverified contention is in direct contrast to his sworn testimony that he "gave" them the properties to avoid probate, id. at 82, and that the only thing his son and step-daughter had to do in exchange for the properties was to "be responsible for the upkeep and pay" some unidentified expense, id. at 83.  On this record, the Government has established that James Chambers does not qualify as a purchaser under § 6323(h)(6), such that he can avoid the IRS tax lien.  Moreover, as the party seeking "purchaser" status, James Chambers bears the burden of presenting proof that he paid adequate consideration.  United States v. Bartle, No. IPO1-0768-C-B/S, 2002 WL 75437, at *3 (S.D. Ind. Jan. 16, 2002); A&B Steel Shearing & Processing, Inc. v. United States, 934 F.Supp. 254, 257 (E.D. Mich. 1996).  Here James Chambers has presented no evidence that he paid "adequate and full consideration" for the Lee Road and Emerson Properties, other than Chambers' unverified contention in his Response that the conveyance was made in exchange for personal services, Chambers' Response at 9, and to avoid probate, Chambers' Deposition at 29, 82.  As such, James Chambers does not qualify as a "purchaser" entitled to priority over the Government's tax lien pursuant to section 6323(a) and (h)(6).  See United States v. Ippolito, 838 F. Supp.2d 1287, 1292 (M.D. Fla. 2012); United States v. O'Day, No. 95-86-Civ-Orl-18, 1996 WL 814496, at *4-5 (M.D. Fla. Dec. 20, 1996) (transferee not a purchaser where conveyance was made as an estate planning convenience).[19]

---

[19]     In a footnote to its discussion seeking foreclosure of the United States tax liens pursuant to 26 U.S.C. § 7403, the Government observes that the Court could also set aside the transfers as fraudulent under Florida Statutes section 726.101 et seq.  See United States' Motion at 14, n.4. However, the Government cites no authority for its position, and instead affirmatively states that "setting aside the fraudulent conveyances is not necessary in this case."  Id.  Given this statement, Chambers

(continued...)

## IV.   Foreclosure on Tax Liens

As explained above, if a taxpayer refuses to pay taxes after receiving notice and a demand for payment, the United States Government automatically receives a lien "upon all property and rights to property, whether real or personal," belonging to the taxpayer in the amount of the unpaid taxes.  26 U.S.C. § 6321.  "A federal tax lien, however, is not self-executing.  Affirmative action by the IRS is required to enforce collection of the unpaid taxes." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 720 (1985).  One method is a "lien-foreclosure suit," brought pursuant to 26 U.S.C. § 7403.  The United States may enforce the lien by commencing such an action in the district court, joining all parties with an interest in the property to the action, and obtaining a judicial sale of the real property.  26 U.S.C. § 7403; see also United States v. Rodgers, 461 U.S. 677, 691-94 (1983).

Pursuant to § 7403, the Government seeks to enforce its tax liens on Chambers' real and personal property.  "[D]istrict courts have the right to order the sale of property encumbered by a tax lien, 26 U.S.C. § 7403, and 'to render such judgments and decrees as may be necessary or appropriate' to complete that sale, id. § 7402(a)." United States v. Christiansen, 414 F. App'x 218, 220 (11th Cir. 2011); see also United States v. Todd, No. 5:05-cv-343-Oc-10GRJ, 2008 WL 2199873, at *3 (M.D. Fla. Mar. 19, 2008).  "[I]n all cases where a claim or interest of the United States therein is established, [the court] may decree

---

[19](...continued)
understandably never addresses the issue in his filings.  On this record, the Court does not interpret the United States' Motion as seeking a determination of whether the transfers should be set aside as fraudulent.

a sale of such property . . . ." 26 U.S.C. § 7403(c).[20]  In consideration of the record in this action, the Court concludes that the Government is entitled to foreclosure of its lien by sale of the Fawnbrook Property, the Deermoss Property, the Lee Road Property, and the Emerson Property.  This is because, in addition to the properties titled to Chambers, the Government may foreclose upon the Emerson and Lee Road Properties although they are currently held by James Chambers.  Donahue Inds., 905 F.2d at 1331 (citing 26 U.S.C. § 6331 and 26 C.F.R. § 301.6331-1(a)(1)).  "Property subject to a Federal tax lien which has been sold or otherwise trasnsferred by the taxpayer may be seized while in the hands of the transferee or any subsequent transferee" (with the exception of transferrees protected by 26 U.S.C. §§  6323 and 6324(a)(2) and (b), including "purchasers").  26 C.F.R. § 3001.6331-1(a)(1).  Thus, "property subject to a federal tax lien need not be in the hands of the taxpayer at the time a levy is made."  Donahue Inds., 905 F.2d at 1331.  Inasmuch as James Chambers does not qualify as a "purchaser" under the Tax Code, the Emerson Property and Lee Road Property in his hands are also subject to levy.

In consideration of the foregoing, it is hereby

**ORDERED**:

1.      Chambers' Motion for Partial Summary Judgment (Doc. 62) is **DENIED**.

---

[20]   Section 7403(c) provides in part:

> The [district] court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and in all cases where a claim or interest of the United States is established, may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

2.      The United States' Motion for Summary Judgment Against Defendants Fred J. Chambers and James Patrick Chambers (Doc. 60) is **GRANTED, in part, and DENIED, in part**.

3.      With respect to the United States' claim for unpaid taxes for tax year 1997, the United States' Motion is **DENIED**, as a genuine issue of material fact remains.

4.      The United States' Motion is **GRANTED** to the extent that the Court finds that:

A.      Defendant Fred J. Chambers is indebted to Plaintiff United States of America for unpaid federal income taxes for tax year 1996, in the total amount of $60,374.06 in taxes, penalties and interest, as of October 19, 2011, plus further interest and statutory additions thereafter, as provided by law, to the date of payment.

B.      Defendant Fred J. Chambers is indebted to Plaintiff United States of America for unpaid federal income taxes for tax year 1998, in the total amount of $35,490.40 in taxes, penalties and interest, as of October 19, 2011, plus further interest and statutory additions thereafter, as provided by law, to the date of payment.

C.      Defendant Fred J. Chambers is indebted to Plaintiff United States of America for unpaid federal income taxes for tax year 1999, in the total amount of $166,002.14 in taxes, penalties and interest, as of October 19, 2011, plus further interest and statutory additions, thereafter, as provided by law, to the date of payment.

D.      Defendant Fred J. Chambers is indebted to Plaintiff United States

of America for unpaid federal income taxes for tax year 2000, in the total

amount of $164,442.08 in taxes, penalties and interest, as of October

19, 2011, plus further interest and statutory additions thereafter, as

provided by law, to the date of payment.

E.      Defendant Fred J. Chambers is indebted to Plaintiff United States

of America for unpaid federal income taxes for tax year 2001, in the total

amount of $230,921.55 in taxes, penalties and interest, as of October

19, 2011, plus further interest and statutory additions thereafter, as

provided by law, to the date of payment.

F.      Defendant Fred J. Chambers is indebted to Plaintiff United States

of America for unpaid federal income taxes for tax year 2003, in the total

amount of $5,040.70 in taxes, penalties and interest, as of October 19,

2011, plus further interest and statutory additions, thereafter, as

provided by law, to the date of payment.

5.      The United States' Motion is further **GRANTED** to the extent that the Court

finds that the United States has a **VALID TAX LIEN** for tax years 1996, 1998 - 2001, and

2003, notice of which has been filed in the public records of Duval County, Florida, upon the

following real property:

A.      A parcel of real property located at 7815 Fawnbrook Circle East,

Jacksonville, Florida 32256 (the "Fawnbrook Property"), which is

legally described as:

> Lot 25B, FAWN RIDGE, according to plat
> thereof as recorded in Plat Book 39, pages
> 74, 74A, 74B, and 74C of the current public
> records of Duval County, Florida.

B.     A parcel of real property located at 4817 South Deermoss Way,

Jacksonville, Florida 32256 (the "Deermoss Property"), which is

legally described as:

> Lot 24-A PINE RUN according to plat
> thereof as recorded in Plat Book 39, page 8
> and 8A of the public records of Duval
> County, Florida.

C.     A parcel of commercial property located at 3606 Emerson Street,

Jacksonville, Florida 32207 (the "Emerson Property"), which is

legally described as:

> Lot 10, Block 14, SPRING MANOR UNIT
> NO. 6, according to plat thereof as recorded
> in Plat Book 21, page 2 of the current public
> records of Duval County, Florida.

D.     A parcel of real property located at 722 Lee Road, Jacksonville,

Florida 32225 (the "Lee Road Property"), which is legally

described as:

> Tract 6, ATLANTIC BOULEVARD
> ESTATES SECTION 5, according to plat
> thereof recorded in Plat Book 18, pages 52,
> 52A and 52B of the current public records
> of Duval County, Florida.

6.     The United States' Motion is **GRANTED** to the extent that the United States is

entitled to **FORECLOSE** its federal tax liens on the four parcels of real property described

in paragraph 5 above, sell the property, and apply the sale proceeds to the payment or partial

-47-

payment of Defendant Fred. J. Chambers' outstanding federal income tax liability, as will be reflected in the forthcoming Judgment.

     7.    In all other respects, the United States' Motion is **DENIED**.

     8.    Pursuant to Rule 54(b), Federal Rules of Civil Procedure, as there is no just reason to delay entry of judgment as to the claims resolved in this Order, on or before **June 13, 2014**, the United States shall file a proposed judgment for the Court's consideration, and transmit a copy of such proposed judgment to the Court via email at chambers_flmd_howard@flmd.uscourts.gov.

     9.    On or before **June 13, 2014**, the parties shall file a notice advising the Court of how they wish to proceed with respect to tax year 1997, as well as any judicial sales of the properties to which the United States tax liens attach.

     **DONE AND ORDERED** in Jacksonville, Florida, this 22nd day of May, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc12
Copies to:

Counsel of Record

-48-